Good. The final matter is the Unisys Retiree Medical Benefits ERISA Litigation, and Mr. Stella. Good morning. Good morning, Your Honor. May it please the Court, good morning. My name is Joe Costello, and I represent Unisys Corporation in this appeal. May I reserve three minutes for rebuttal? Go ahead. Thank you. Unisys has identified four reasons why the District Court's decision in favor of the borough's retirees, represented by Mr. Sandel, should be reversed. I'd like to focus on two of those reasons this morning. First of all, the District Court erred in finding a misrepresentation here, because a description of retiree medical benefits that is an accurate reflection of the plan administrator's intent at the time it is made is not an actual misrepresentation under ERISA. Second, the District Court erred in concluding that Unisys failed to satisfy its duty of plaintiffs by not providing information regarding the fact that the benefits were subject to change, because, in fact, Unisys had repeatedly disclosed that the benefits were subject to change, not only in the summary plan descriptions, but also in a number of other communications that were given to plan participants, both before they retired and at the time of their retirement. I'd like to turn to the misrepresentation issue first, if I might. Let me ask you, do you agree that an omission can be viewed as a misrepresentation? No, Your Honor, I don't. Not under the way the cases have been analyzed by the Third Circuit. In Daniel's case, the Court made a clear distinction between cases of omission and cases of misrepresentation. The plaintiffs, in the way they've presented the case, had two separate claims in their complaint, omission cases and misrepresentation cases. And under that set of circumstances, I think Daniel suggests that there are two different rubrics that you look at, two different sets of elements that you look at for a misrepresentation case and an omission case. On a misrepresentation case, as the Court said in Luethner, the description of the benefits has to be inaccurate or somehow not reflect an accurate reflection of the plan administrator's intent at the time it is made. If it's an accurate reflection of the plan administrator's intent at the time it is made, it's not actionable. That was the holding of the Third Circuit in Luethner. And the facts in Luethner are very similar to the facts in this case. In this case, the magistrate judge found that the misrepresentation was a statement by Unisys to each of the plaintiffs to the effect that their benefits after retirement until age 65 would cost $20 a month. And thereafter, they would be free. They would be for no cost. There was no finding that anyone said to any plaintiff that the benefits were guaranteed, were vested, were not subject to amendment or change, nothing like that. So the statements made to the plan participants, to the plaintiffs in this case, were an accurate reflection of the terms of the plan at the time the statements were made. What about the memo of Mr. Blaine, which seemed to suggest, it says, many retirees were undoubtedly suggest that when they retired, they felt their medical program would continue without change? Your Honor, that goes to the omission claim, and I'll talk about that in response right now. The Judge Stapleton, in his 2001 decision in this case, and as you know, this case has been up and down a number of times. Judge Sirka, you know that better than anyone. In articulating the standard that applied to the omissions, Judge Stapleton said the standard is whether a reasonable fiduciary in unisys position would have foreseen that its actions would have resulted in retirees making important life decisions, like the decision to retire, based on a mistaken belief that they had guaranteed retiree medical benefits. You need to look, then, at what facts unisys had in its possession to evaluate what a reasonable fiduciary might have done under that set of circumstances. One of the facts is what you're alluding to, Judge, and that is there was a memo written by Thomas Penhale, ghostwritten by Thomas Penhale for Jack Blaine, who was a Senior VP of Human Resources, in which Mr. Penhale indicated that certain retirees might believe that their benefits would not change. There's two reasons why that memo has no bearing on whether there was an additional duty of disclosure beyond the SPD's here. Number one, the magistrate judge found, as a finding of fact, that when Mr. Penhale wrote that memo, he was talking about Sperry retirees, because Mr. Penhale was responsible for Sperry retirees. It was Sperry and Burroughs merged to form unisys, and there was a separate plan administration staff even after the merger. There were separate plans, and Mr. Penhale was responsible for the Sperry retirees. Sperry had a very different practice on how it treated retiree medical benefits. Generally speaking, it did not modify retiree medical benefits after people retired, in contrast to Burroughs. So Mr. Penhale was talking about Sperry, not Burroughs. But going back to this reasonable person standard, this reasonable fiduciary standard, there was other information that unisys had in its possession that the court needed to look at in evaluating whether unisys' actions in this case were sufficient to satisfy its duty of disclosure. The information that unisys had in its possession, of course, was number one. It had repeatedly distributed summary plan descriptions and other documents to plan participants, including these plaintiffs, that set forth unambiguously that the company had the right to modify or terminate benefits. In fact, this court, the Third Circuit in 1995, affirmed unisys' victory against the Burroughs retirees on their claims that they had vested benefits under the terms of the plan and their claims of estoppel. The court found that the SPD was perfectly clear, rejected the argument that the SPD could somehow be interpreted as applying to only active employees versus retirees. So unisys knew, the reasonable fiduciary sitting in unisys' position would know, that it had actually satisfied its statutory duty of disclosure under ERISA. But Judge Mansman, in writing the 1995 opinions, left open and stated for the court, I don't think there was any dissent, that there was a viable claim for breach of fiduciary duty. So, I mean, if you are correct, wouldn't that necessarily have required just the end of the case at that point? Judge Mansman's decision, Your Honor, in 1995, had nothing to do, if you're talking about decision where she... When she sent out the law... Yeah, that was with regard to the Sperry retirees. It was based on an evidentiary record relating solely to the Sperry retirees. And what do you say is the distinction between the Sperry retirees and the Burroughs retirees? Thank you for asking, Your Honor. This is an important distinction, and it's one that the district court and the magistrate judge found as a matter of fact. Sperry and Burroughs merged in 1986 to form Unisys Corporation. They kept separate benefit plans, separate administrative staffs. They had different practices in terms of how they handled benefits. All of that was distinct. The evidentiary record before the Third Circuit in Judge Mansman's off-sited decision related solely to the Sperry retirees. And all you have to do is read it to make it... With all due respect, you tell us that they're different, but my question was, what is the difference? Here's the difference, Your Honor, a number of things. Number one, there is no evidence in this record that any of these plaintiffs were told that their benefits would not change. The Sperry record told a very different thing. The Sperry record indicated that actually plaintiffs in that case on the Sperry side were told that their benefits would not change. Number two, Sperry had a practice of not changing benefits after people retire. Burroughs had no such practice. Indeed, the magistrate judge found in this case that Burroughs specifically changed benefits for people who had already retired and imposed additional costs on those retirees. The third thing was, Your Honor... Did you argue that in the district court? Yes. And the district court didn't make a finding in your favor on that, did it? On what issue, Your Honor? On the distinction between the Sperry and the Burroughs and what was told to the Burroughs employees, the diaries. Well, there was no finding on the distinction between what was told between the two, but all you need to... So what do we, if we're reviewing, what is the basis for our review on precisely the point that you're telling us? Because you're distinguishing the 1995 opinion and you're saying that that dealt with the Sperry employees and that we can easily tell, but is there any finding that that wasn't the case with the Burroughs employees? Sure. If you had argued it and the district court didn't make a finding, where does that leave us in our review? Well, it was just, first of all, it was just one of the factors that in our position is, would lead a reasonable fiduciary to conclude that they had disclosed everything they needed to disclose by including the reservation of rights in the summary plan descriptions. But, Your Honor, all you need to do is look at the account of what the plaintiffs were told in this case and compare it to the statement of facts in the Sperry decision by the Third Circuit, and the difference is stark. Again, there was specific evidence in that case upon which Judge Mansman relied in concluding that there were actual misrepresentations where people were told that their benefits would not change after retirement. There was no such evidence in this record presented, none. The findings for each plaintiff state exactly what they were told, and the finding that the basis for the misrepresentation claim is that they were told that their benefits would cost $20 per month for until age 65, and nothing thereafter. So, unequivocally, there was a difference. And the magistrate judge also acknowledged that, in contrast to Burroughs, Sperry didn't change benefits for people after they retired. Please put another five minutes on, please, and we'll grant the appellees some more time. So, again, just getting back to the failure of disclosure, well, let me finish on the misrepresentation claim. There are two separate claims. I think Luthner is clear that there was no affirmative misrepresentation that was actionable here. Judge Fisher, you dissented in part in Luthner and concurred in part, and on the plaintiff for whom you dissented, it was interesting, and I think it's illuminating here. You noted that on the record there was an allegation that the plaintiff had actually alleged that she was told that her benefits would not change and that she had guaranteed lifetime benefits that would not be subject to change. You had no quarrel with the standard that Judge Roth articulated, that it has to be an accurate reflection, but you said, reading the pleadings in the light most favorable to plaintiff, that you thought the plaintiff got by a 12B6 motion. The key point here, Your Honor, is there was no such evidence on this record. No one was told that their benefits were not going to be subject to change. To the contrary, they were routinely told, not only in the summary plan description, but in multiple other communications, that their benefits were subject to change. But doesn't it make a difference here that the information that they were getting that it would be $20 a month up to age 65 was given to the plaintiffs at the time that UNICEF was giving them retirement counseling? Doesn't that make a big difference in this case? Well, I think it makes it important that you provide accurate information, but it doesn't change the fact that there's no obligation to repeat what is a reservation of rights clause that's been routinely disclosed absent some – But not disclosed at the time of that retirement counseling. I mean, the most important time in some people's views, and I guess the district court agreed to this, is that when you're making a determination as to whether you should or should not retire, what you hear at that point is going to have a big impact on the decision you make. And going back to the standard, Your Honor, what a reasonable fiduciary would do under that set of circumstances? Wouldn't a reasonable fiduciary think that at that time, giving that information without reiterating the summary plan document language would be a non-disclosure? Well, there would be nothing to trigger that thought in the fiduciary's mind, Your Honor. You don't think so? You disagree with that? I disagree as a matter of law. All right. Remember, they had already provided the summary plan description. At the time people retired, Your Honor, they actually got a form, a COBRA form, that repeated the reservation of rights in writing at the time they retired, in those sessions. So there was a writing that repeated the reservation of rights. Now, to suggest that they also had an obligation to provide an oral reminder of that reservation of rights, there's nothing in the law to support that, absent some evidence that there was an understanding that they were confused about this issue. Judge Fisher's question assumed that the borough's retirees were also told that they would just pay $20, et cetera. Is that correct? That is correct. But in answer to my question, when I asked about the difference, if any, between the Sperry retirees and the borough's retirees, I thought you told me, my understanding, the transcript will show it, and we listened to it, I thought you told me that, well, that 1995 case dealt with the Sperry employees, and they were told that they would pay $20. And certainly the implication I got from that is that, from your answer, that that wasn't told to the borough's retirees. Was it also told to the borough's? With all due respect, Your Honor, the distinction I made is the Sperry retirees, there was evidence that the Sperry retirees were told that their benefits would never change after they retired. That's the distinction. The borough's retirees were simply said, cost $20 a month and nothing thereafter. And putting yourself in the position of a reasonable fiduciary, the question is, was there something that would have triggered an additional obligation to repeat what had already been said by that point at least seven times to these individuals and had been told to them in writing. You don't mean said, you mean was put in the ROR. Right, in writing. And isn't there a difference between what is in this paper that has a lot of legal terms or et cetera, and what you're actually told when you come to a meeting? I think that's picking up Judge Fisher's question. Well, Judge Fisher is absolutely correct that none of these plaintiffs were told orally at the time they were retiring that their benefits were subject to change. But my understanding of the law is that unless there's something would have triggered that additional obligation, there was no obligation to do so. And there was no evidence on this record that any of the plaintiffs suggested that they were confused about whether benefits were subject to change. In fact, the evidence is to the contrary. At least five of the plaintiffs testified that they knew benefits were subject to change. They tried to trivialize the changes, but they admitted that they knew benefits were subject to change. There was no imminent plan to actually terminate the plan. I submit to you, Your Honor, this would be a very different case if when they said $20 a month and nothing thereafter. A few months later, they terminated the plan. There was nothing. The plan wasn't terminated until at least three and a half years after these people enjoyed these benefits. In some of the plaintiffs, at least six years after the people enjoyed these benefits. What's our standard of review? Standard of review on the factual findings, none of which we challenge, is clear error. The standard of review on the legal conclusions, including the conclusion that there was an actionable affirmative misrepresentation and an actionable duty of disclosure was pro bono. Pardon me. De novo, pro bono. You think that's a legal determination? Or at least a mixed question of law? I think the issue of what was said to individuals is obviously a factual determination, and we don't challenge what was said. The determination of whether that was an actionable misrepresentation under ERISA, I believe is a conclusion of law to which a de novo standard of review would apply. Okay, good. Thank you very much, Mr. Costello. We'll have you back on rebuttal. Mr. Sandel? Good morning. Thank you, Your Honors. Good morning. I'm sorry, I think half of Pennsylvania is ailing this week, Judge Fischer. Every time I hear Mr. Costello make these arguments, I feel 14 or 15 years younger, and I'm thinking of the morning, Judge Sirica, we argued this case in 1995, and Judge Mantsman was with us. The arrangement of the chairs was a little different. But I think that advocacy has gotten the better of Mr. Costello this morning, and there's quite a lot of hyperbole in his presentation. Back in 1995, as Judge Sloverter mentioned, Judge Mantsman writing for the court pointed out that it's not, it wasn't an issue of predicting what would happen in the future. It was the fact that as to the Sperry plaintiffs who were before the court in that opinion, there had been a failure to disclose that Unisys presently had a right to terminate or amend the plan, and it hadn't been adequately disclosed. And that applies to every retiree under the sun, whether they work for Sperry or Burroughs or Ford and so on. Your Honors, of course, write for more than the parties who are before you, and that's why that 57F third opinion is cited in numerous cases. It's basically a building block of this circuit's very extensive fiduciary breach jurisprudence. On the issue of findings of fact, of course, our subject to a clearly erroneous standard, and we have a 123-page report by Magistrate Judge Ruder, which I'm sure the court has studied. There is another lengthy opinion which synthesizes all those findings, and it simply is not correct for Mr. Costello to tell you that there was no evidence of misrepresentations. In fact, if we look on page 89 of the report, I'm sorry I don't have the record site for you, 89 of the report and recommendation lists by name of each plaintiff the finding of fact that pertains to the representation. And there are 14 plaintiffs, and I don't want to read all 14, but I will give you a little flavor if I may. As to Mr. Gallagher, on page 34 at paragraph number 117, Ms. Gerber, the company benefits person, represented to Mr. Gallagher that he could continue medical coverage under the Burroughs plan for he and his wife at a cost of $40 per month until age 65, at which time there would no longer be any cost for them for retiring medical benefits. If I turn to page 37 on Francis Walnut of the report, paragraph 139 at the bottom, he attended a meeting in 1986 in connection with a program he did not actually participate in. Human resources staff member told attendees that in retirement, retirees would receive the same medical benefits they received as employees, and at age 65 there would be no cost for medical benefits. We even have, as you perhaps have noticed, audiotapes in the record or transcripts of audiotapes. Some retirees who are not these particular plaintiffs actually recorded group meetings, one at the world headquarters in Detroit in 1986 and one in Chicago in 1988, which is roughly contemporaneous, and I think that we can infer from the presumption of regularity that if company representatives were telling employees in one location that they were authorized to say what they say and that it was not a rogue representative. And the audiotapes include statements like on page 2992 of the record, if you fill out the card that will give you your medical benefits for a lifetime, and these are Burroughs employees, not Sperry employees. Then in the Chicago meeting, the tape on page 3021 of the record, if you take the program, you're going to have the current one that we have now before it changes. You know that there was a change coming. Someone in the audience asked, only until April 1st, meaning April 1st, 1989, and the speaker, the representative of the company said, quote, no, forever, close quote. So it's certainly not the law that the word lifetime is a magic word or the word guaranteed is a magic word. And as your honors go through the record of this case and the extensive findings that Magistrate Judge Ruder compiled after a trial, that you'll see that all of the elements of the fiduciary breach claims have been satisfied in this case. There really is no issue of law that prevents any question at all being raised about the integrity and the viability of the judgment in this case. As to the issue of reasonable fiduciary, there is copious evidence, including the Bain memo that your honor mentioned, the Blaine memo, that the company knew these people were retiring in the belief that if I go out now, I am going to lock in this much more valuable program of Burroughs medical benefits. Mr. Costell would like the court to believe that, well, at least they got the benefits for three and a half years. But imagine what would have happened if the company had said, if you go out now, you will have these benefits except we can take them away next month. It would have been entirely different. And, in fact, there's also evidence and findings of the financial gains that the company was going to reap by encouraging the senior, more highly paid employees to leave early because it would save payroll costs, fringe benefit costs for the company and achieve some staffing and reduction objectives. There was some mention of Daniels. The Daniels case, excuse me, synthesizes the strands of the court's jurisprudence and basically says that Daniels versus Thomas and Betts, and there's about this in the brief, of course, there are really two kinds of violations that can occur and sometimes there's a mixture. One kind of violation is the fiduciary simply fails to tell an important piece of information. The Bixler case, a widow called up the benefits office. Her husband had just died. There was an issue of whether the benefits staff should have informed her of her ability to elect COBRA coverage to continue medical for, I guess, it was 18 months. So there the issue was, did the person who received the phone call have reason to know that this was material to the person? So in a mere failure to disclose case, there has to be some factual basis for a reasonable fiduciary to conclude that the information would be material. We don't actually have that scenario in this case. We have a host of affirmative misrepresentations going out to the entire workforce about the end of the borough's plan and this is the time to elect to get it, and so we fall into the second strand of the jurisprudence, which is what is the law when affirmative misrepresentations are made? And when affirmative misrepresentations are made and there's conclusion that they are material, i.e., they would mislead a reasonable employee in making an important financial decision, then all that we have to show is reasonable foreseeability for a reasonable fiduciary that harm could occur. You don't have to show company knowledge that this person or that person was about to rely, and that obviously makes sense because the affirmative misrepresentation has occurred, and when you have an affirmative misrepresentation, harm is at least foreseeable, if not likely, and that's really the analysis that Daniels lays out. I want to touch briefly on the Lueffner case before turning to remedies, if I may. But on Lueffner, it's a puzzling decision. I certainly am more of the view that Judge Fisher's dissent is correct as a matter of construing the allegations. But, Judge, the Lueffner decision was a 12B6 dismissal, an appeal of a 12B6 dismissal, and the case mostly concerns is there enough alleged here to find standing for a person who is no longer a participant, which has become a hot issue in ERISA, as you may know. And it does not purport to overrule Unisys 1, 2, or 3, or any of the other number of cases which say that a statement can be facially true but misleading. There are affirmative misrepresentations. There are failures to disclose. All that case law is intact after Lueffner. It has to be understood as a very limited decision. Finally, on the issue of COBRA forms and summary plan descriptions, there are copious findings below at both levels, although, of course, with more detail by Magistrate Ruder, that those did not satisfy disclosure obligations. And if I could, in the remainder of my time, unless your honors have more questions about liability or fees, I'd like to turn to the issue of remedies. On remedies, your honors know that the Great West v. Knutson case has cast a pall over the whole area. And it's certainly true that the statute limits litigants to what is called appropriate equitable relief. But the lower courts, and perhaps this is an unfortunate example, have been over-reading Knutson and stretching it far beyond its actual limits. I think it's helpful to understand that in the relief situation under ERISA, we can divide the world into two parts. One part is, what is the relief when a non-fiduciary is the defendant? The non-fiduciary has very limited duties. It doesn't reach any duties because it's a non-fiduciary. And this was the situation in Mertens, which involved an actuary, a non-fiduciary. And in Knutson and Sereboff, the defendant was a planned participant who received a personal injury recovery, and a medical plan was attempting to exercise subrogation rights. So there's no ERISA violation. There's no fiduciary violation. So in the limited circumstance of non-fiduciary defendants, all that really is going to be authorized under ERISA is a constructive trust, because there's no other possible remedy. And constructive trusts, of course, create the doctrine that you have to trace the specific dollars. You have to make sure that the subject of the relief is there in the hands of the defendant. And the district court found you couldn't trace. Yes, Your Honor. And the reason, Your Honor, that was error, was because the court overlooked the alternative remedies, which do apply when a fiduciary is a defendant. When a fiduciary is a defendant, you do have the opportunity to get an injunction, and that's the alternative remedy that Judge Kaufman adopted. You, as a fiduciary, promised benefits of a certain type. We, as chancellors or as a chancellor, are now going to hold you to that representation. And the relief runs against you as a fiduciary, not as a planned sponsor. So you, as a fiduciary, must provide the benefits going forward in some form, and it just so happens that under ERISA, whenever you set up a program like that, it becomes a plan under the test laid down by the Supreme Court. But on retrospective relief, which is really what's at issue in this case and so many other cases where tragedies to families occur because of a fiduciary mistake, courts have been foundering, trying to grasp a way to give meaningful relief. And I think this case provides the vehicle for the court to lead the way, as it has in so many other circumstances, as to why Mootson does not foreclose appropriate, meaningful retrospective relief. And we have, in the first instance, the issue of reformation. Despite whatever Mr. Costello and Unisys has said in the brief, there's no doubt that reformation is an equitable remedy. We don't run afoul of Mootson. And it's also true that reformation is available in the case of unilateral mistake caused by fraud or inequitable conduct on the part of the defendant. And if there is liability here, there certainly has been fraud or inequitable conduct. So what we are saying is that you, as a fiduciary, describe the plan as having X attributes. We are now going to reform the plan for this particular group and make the plan match the representations. And that was the remedy that Judge Ruder adopted. And for reasons that aren't really explained in Judge Kaufman's opinion, he decided to go a slightly different route and just do the injunction. But reformation in this case and in many other cases is going to be a very important method to find a vehicle to provide retrospective monetary relief. Because as the plan is reformed, it then becomes an enforceable benefit obligation. And if we reform the plan retrospective to the day before the plan was terminated or some other date before the termination, we now have a benefit obligation on the part of Unisys or any other defendant to perform under the terms of the reform plan. And Serebroff teaches us that we can do that under A3B, Section 502A3B. Let me now turn to the issue of disgorgement of profits. Judge Kaufman believed, and Magistrate Judge Ruder believed, that tracing applies to the disgorgement of profits remedy. We attempt to show, I hope successfully in the brief, that if you look at the restatement, the treatises, the case law, tracing does not apply to disgorgement of profits. The reason being that it comes from an entirely different purpose. It follows the ancient, I hope honorable, equitable maxim that a fiduciary should not profit from wrongdoing and that when wrongdoing occurs it has to disgorge all the gain. In this case, we have findings that this attempt to mispromote, misadvertise, the Burroughs Plan did help the company secure financial gains. And their finding was by Magistrate Judge Ruder and it was also endorsed expressly by Judge Kaufman. Yes, Your Honor. Do we have the totality before us in this record of the number of people affected? Or are there other potential plaintiffs out there on this situation? The Burroughs retirees, there has been a settlement after the rulings below. I'm happy to report. And there are no more Burroughs retirees save for a few who have not yet endorsed the settlement. There was another group of litigants, the so-called Unisys class litigants, who retired under a plan that was in effect from 1989 to 1992 and their claims are similar in our view. They are still in litigation and Your Honor's rulings, in this case, will guide those eventual proceedings. Does that answer your question, Your Honor? It's about 400 households, I think, who are left. On the attorney's fees, would you agree that there is no bad faith on the part of Unisys? Well, I think the bad faith is not the test, Your Honor. I understand there's a five-factor test, but with respect to that, would you agree? Well, I think that bad faith, as the cases have applied it, say that when your conduct is such that it's culpable and gives rise to liability, that that satisfies the ERSIC factor. And we didn't try the case as a bad faith case because there was no need to, but I think that if we had to reopen, and I hope we don't have to, the issue of the state of mind of the company at the time these people were being told they would have benefits, that they would never be taken away, that that can be deemed to be bad faith, the historic conduct, the historic conduct. Any other questions? Thank you, Your Honor. Thank you very much. Mr. Costello. Thank you, Your Honor. I think we certainly want to hear something on the Knudsen argument and the remedy as well. I will address that very quickly, Your Honor, but I just wanted to address the hyperbole point that Mr. Sandals raised. Every statement that he just said about what plaintiffs were told was an accurate reflection of the plan at the time that statement was made. It was not a misrepresentation under Luthner. But he also said that there were findings by Magistrate Luther that there were affirmative misrepresentations, that this isn't only an omissions case but also an affirmative. Now, is that supported by the record? The district court judge and the magistrate judge found that there were both, concluded that there were both actionable affirmative misrepresentations and failures to disclose. And we appeal both. Our argument is the statements that they relied on to base the affirmative misrepresentation claim on were accurate statements. And under Luthner, they're not actionable. It couldn't be clearer. The facts are irreconcilable between Luthner and the facts in this case. The failure to disclose claim Luthner didn't cover, and that's when you need to apply the reasonable fiduciary standard. And in the absence of evidence, and Judge Stapleton said this himself in his 2001 decision, in the absence of evidence that Unisys had knowledge of some confusion on the part of any of these individual plaintiffs, there's no basis for requiring Unisys to do what it had already done on a number of occasions, and that is to tell plan participants that their benefits were subject to change. And with regard to these audio tapes that Mr. Sandles quoted, Mr. Sandles stipulated at trial that none of those audio tapes were heard by any of the plaintiffs, that none of the plaintiffs in this case, remember these are 12 plaintiffs who each have an individual burden, none of them attended the meetings where these allegedly misrepresentation statements were made. So we have a clear understanding of that. On the issue of remedy, just very quickly, Your Honor, if you allow me, I think on the issue of reformation, reformation is only available in two circumstances, when there is a mutual mistake between the parties that is then as a result of an incorrect memorialization of the agreement between the parties in writing. So it's got to be a mutual mistake, and it's got to be in writing. And the classic situation would be a Scrivener's Error, for example, like the Murata case here in the Third Circuit. There is also a limited doctrine where there's a unilateral mistake accompanied by fraud that led to, again, another incorrect writing. There's no fraud here, Your Honor. There's been no finding of fraud. In fact, Judge Kahn specifically in his decision earlier in this case with regard to the Burroughs retirees said that there was no fraud by Unisys in this case. It was on a summary judgment record at that point, but there's certainly been no finding subsequently that there was any fraud on the part of Unisys. And secondly, there's no writing here. There's no written document that is to be where there was a mistaken memorialization of the agreement between the parties. So Reformation doesn't apply. Discouragement of profits, Knutson speaks to that specifically. Discouragement of profits does not require tracing, but it does require a particular property right that can be identified and upon which a constructive trust can be applied. So the classic case, Your Honor, is a defendant. We understand the classic case. Anything else you want to say on the remedies? No, Your Honor. Okay. Any questions here? Good. We're going to have a transcript made of the argument. The case was very well argued by both sides. And a transcript of the oral argument will aid us in writing the opinion here. We'd ask that you share the cost of that. We'll be happy to do it. Thanks for your time, Your Honor. Good. We thank both counsel in this matter.